IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02603-PAB-NYW

CATHLEEN CARMODY,

   Plaintiffs,

v.

SHERIFF MIKE ENSMINGER, in his individual and official capacities,
UNDERSHERIFF STANLEY BISHOP, in his individual capacity,
CORPORAL FRANK SCOFIELD, in his individual capacity,
DEPUTY ERIC VOIGT, in his individual capacity,
CORRECTIONAL HEALTHCARE MANAGEMENT, INC.,
CORRECTIONAL HEALTHCARE COMPANIES, INC.,
CORRECT CARE SOLUTIONS, LLC, and
NURSE SUSAN CAMPBELL in her individual capacity,

   Defendants.

## ORDER

This matter is before the Court on County Defendants' Motion for Partial Dismissal [Docket No. 26] filed by Defendants Sheriff Mike Ensminger, Undersheriff Stanley Bishop, Corporal Frank Scofield, and Deputy Eric Voigt (collectively, "County Defendants"); Correctional Healthcare Management, Inc.; Correctional Healthcare Companies, Inc.; and Correct Care Solutions, LLC's Motion to Dismiss in Lieu of Answer [Docket No. 28]; and Nurse Sue's Motion to Dismiss in Lieu of Answer [Docket No. 29] filed by defendant Nurse Susan Campbell.[1] The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

---

[1] Defendant Nurse Susan Campbell was named in the original complaint as "Nurse Sue L/N/U." See Docket No. 1.

## I. BACKGROUND[2]

This suit arises from plaintiff Cathleen Carmody's fall while in custody at Teller County Detention Center. In September 2014, when plaintiff was sixty-three years old, she had hip replacement surgery. Docket No. 38 at 6, ¶ 24. Because of the surgery, plaintiff was told by her doctor to use a walker to aid her balance until she no longer needed it. *Id.*, ¶ 25.

On October 23, 2014, plaintiff was arrested for an alleged probation violation. Docket No. 38 at 6, ¶ 26. After appearing in court, plaintiff was taken to Teller County Detention Center. *Id*. The detention center is run by defendants Sheriff Mike Ensminger and Undersheriff Stanley Bishop, who set policy for the facility and determined the training of prison officials. *Id*. at 15, ¶ 79 and at 16, ¶¶ 82-83. Teller County had a contract with defendants Correctional Healthcare Management, Inc., Correctional Healthcare Companies, Inc., and Correct Care Solutions, LLC (collectively "CCS Defendants") to provide medical staff and services at the detention center, including training of prison staff regarding medical care. *Id*. at 4-5, ¶¶ 17-21 and at 16, ¶ 81. At facilities that contract with CCS Defendants, including Teller County Detention Center, numerous inmates have suffered injuries as a result of inadequate medical care. *Id*. at 11-14, ¶¶ 58-69.

When plaintiff arrived at the detention center for processing, defendant Corporal Frank Scofield approached plaintiff and, ignoring plaintiff's protests and inability to walk on her own, took away plaintiff's walker and told her that she was going to have to do

---

[2] The facts below are taken from plaintiff's amended complaint, Docket No. 38, and are presumed to be true for purposes of the motions to dismiss.

without it. *Id*. at 6-7, ¶¶ 28-32. During her incarceration, plaintiff was only allowed to use her walker when her attorney visited and for court appearances. *Id*., ¶ 33. Because of her limited ability to walk, plaintiff stayed in her room most of the time and other inmates brought her food in her room. *Id*., ¶ 34.

On October 27, 2014, plaintiff went to the dayroom to watch television and, while attempting to sit down, she lost her balance and fell on her back. Docket No. 38 at 8, ¶¶ 36-37. Defendants Nurse Susan Campbell and Deputy Eric Voigt responded to the scene. *Id*., ¶ 39. When plaintiff said she needed an ambulance, Nurse Campbell responded, "[w]e don't do that here." *Id*., ¶¶ 39-40. Nurse Campbell and Deputy Voigt pulled plaintiff off the floor and took her back to her room. *Id*., ¶ 41. Nurse Campbell did not perform an examination of plaintiff, but she did give plaintiff more Tylenol. *Id*., ¶ 42.

Plaintiff suffered constant, severe pain for the remainder of her incarceration. Docket No. 38 at 9, ¶ 43. On November 5, 2014, plaintiff was ordered released and, the next day, she was discharged from custody. *Id*., ¶¶ 45-47. Plaintiff continues to suffer chronic back pain that is only partially relieved with morphine. *Id*. at 10, ¶ 54.

On October 19, 2016, plaintiff filed her complaint. She brings three claims under 42 U.S.C. § 1983 for deliberate indifference to her serious medical needs in violation of the Fourteenth Amendment and one claim under Title II of the Americans With Disabilities Act ("ADA") denying plaintiff a reasonable accommodation by allowing her to use her walker. Docket No. 1. On December 23, 2016, County Defendants filed a motion to dismiss all claims against them except for the claims against Corporal

Scofield. Docket No. 26. On January 9, 2017, CCS Defendants filed their motion to dismiss the claims against them for failing to state a claim. Docket No. 28. Nurse Campbell filed a motion to dismiss on the basis of qualified immunity. Docket No. 29.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation marks and alteration marks omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson,* 534 F.3d at 1286 (alteration marks omitted).

## III. ANALYSIS

### A. Deliberate Indifference Claims

"Under the Fourteenth Amendment's Due Process Clause, pretrial detainees are entitled to the same degree of protection against denial of medical care as that afforded to convicted inmates under the Eighth Amendment." *Estate of Hocker by Hocker v. Walsh*, 22 F.3d 995, 998 (10th Cir. 1994). To bring a claim for deliberate medical indifference against an institution, plaintiff must allege "such gross deficiencies in

4

staffing, facilities, equipment, or procedures that the inmate is effectively denied access to adequate medical care." *See Garcia v. Salt Lake Cty.*, 768 F.2d 303, 308 (10th Cir. 1985) (citing *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980)). To bring a claim for deliberate indifference to medical needs against an individual, a plaintiff must allege: "(i) that he suffered from a serious medical need – that is, one that has been diagnosed by a medical provider as requiring treatment or one which even a lay person would easily recognize as requiring medical attention; and (ii) the Defendant was subjectively aware of that need and that failing to treat it would pose an excessive risk to the inmate's health or safety, but nevertheless elected to delay or deny treatment for it." *Ajaj v. Fed. Bureau of Prisons*, No. 08-cv-02006-MSK-MJW, 2011 WL 902440, at *16 (D. Colo. Mar. 10, 2011) (citing *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)). The first prong is examined objectively, while the second is examined subjectively and takes into account whether a prison official "knows of and disregards an excessive risk to inmate health or safety." *Sealock*, 218 F.3d at 1209 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

The Court first addresses plaintiff's claims against those who plaintiff alleges personally participated in the deprivation of plaintiff's constitutional rights and then addresses plaintiff's claims based on indirect causation.

### 1. *Claims Against Personal Participants*

#### a. **Deputy Voigt**

County Defendants argue that plaintiff has failed to allege facts showing that Deputy Voigt had knowledge of plaintiff's serious medical need or that he was

deliberately indifferent to any serious medical need of which he was aware. Docket No. 26 at 7. The Court agrees. Plaintiff alleges that Deputy Voigt, along with Nurse Campbell, responded to plaintiff's fall. Docket No. 38 at 8 ¶ 39. While plaintiff stated that she was in pain and requested an ambulance, plaintiff does not indicate any facts from which Deputy Voigt knew or should have known plaintiff's fall presented an excessive risk to plaintiff's health. *See Sealock*, 218 F.3d at 1209 (citing *Farmer*, 511 U.S. at 837). Further, given the presence of Nurse Campbell, plaintiff does not allege any facts that would support a finding that Deputy Voigt prevented plaintiff from receiving treatment or denied her access to "medical personnel capable of evaluating the need for treatment." *Id*. at 1211 (citing *Ramos*, 639 F.2d at 575); *McCracken v. Jones*, 562 F.2d 22, 24 (10th Cir. 1977) (holding that a prison official was entitled to rely on the opinion of a medical professional and that plaintiff's disagreement with that opinion did not provide a basis for a claim). Therefore, the Court will dismiss plaintiff's second claim for relief with respect to Deputy Voigt.

### b. Nurse Campbell

Nurse Campbell argues that she is entitled to qualified immunity on plaintiff's second claim for relief. Docket No. 29 at 1. "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity provides immunity from trial and the other burdens of litigation such as discovery, rather than merely a defense to liability. *See Saucier v.*

*Katz,* 533 U.S. 194, 200 (2001), *overruled on other grounds by Pearson*, 555 U.S. 223. Therefore, a court should resolve questions of qualified immunity at the earliest possible stage of litigation. *Anderson v. Creighton,* 483 U.S. 635, 646 n.6 (1987). However, a plaintiff facing a qualified immunity challenge still does not have a heightened pleading standard. *Currier v. Doran,* 242 F.3d 905, 916-17 (10th Cir. 2001).

The parties dispute whether Nurse Campbell is covered by the doctrine of qualified immunity. "For private parties, courts 'look both to history and to the purposes that underlie government employee immunity' to determine whether qualified immunity applies." *The Estate of Lockett by & through Lockett v. Fallin*, 841 F.3d 1098, 1107-08 (10th Cir. 2016) (quoting *Richardson v. McKnight*, 521 U.S. 399, 404 (1997)). Qualified immunity serves three purposes: first, "qualified immunity 'protect[s] the public from unwarranted timidity on the part of public officials'"; second, it works "to ensure that talented candidates [are] not deterred by the threat of damages suits from entering public service"; third, it "reduces the chance that lawsuits will distract officials from their governmental duties." *Rosewood Servs., Inc. v. Sunflower Diversified Servs.*, Inc., 413 F.3d 1163, 1166-67 (10th Cir. 2005) (quoting *Richardson*, 521 U.S. at 408). In *Richardson,* the Supreme Court made clear that its holding was limited to the situation before it, "in which a private firm, systematically organized to assume a major lengthy administrative task (managing an institution) with limited direct supervision by the government, undertakes that task for profit and potentially in competition with other firms." 521 U.S. at 413.

The Tenth Circuit has not decided whether qualified immunity is available "to employees of a private company providing medical services to inmates." *Kellum v. Mares*, 657 F. App'x 763, 768 n.3 (10th Cir. 2016) (unpublished). However, as the Court has previously recognized, "the other circuits to have addressed this question have all found that qualified immunity is unavailable to employees of a private company providing such medical services." *Estate of Grubbs v. Weld Cty. Sheriff's Office*, No. 16-cv-00714-PAB-STV, 2017 WL 951149, at *5 (D. Colo. Mar. 8, 2017) (collecting cases). Nurse Campbell argues that the public policy factors militate in favor of granting qualified immunity to medical professionals employed by private entities providing services to inmates. Docket No. 29 at 5-9. Circuit courts have rejected these arguments and have declined to extend qualified immunity to private medical professionals by finding that there is no history of affording qualified immunity to private medical providers, *McCullum v. Tepe*, 693 F.3d 696, 704 (6th Cir. 2012), and that private competition addresses possible timidity on the part of private entities. *Jensen v. Lane County*, 222 F.3d 570, 578 (9th Cir. 2000) (citing *Richardson,* 521 U.S. at 410-11); *see also Hinson v. Edmond*, 192 F.3d 1342, 1347 (11th Cir. 1999). Accordingly, the Court declines to extend qualified immunity to Nurse Campbell and dismissal of plaintiff's second claim for relief as to Nurse Campbell is not warranted.

### 2. Claims Against Non-Participants

Local governments may not be sued under 42 U.S.C. § 1983 on a theory of respondeat superior. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 692 (1978). Instead, local governing bodies can be sued directly only where "the action that is

alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690 (footnote omitted). "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694.

In order to state a claim for municipal liability under § 1983 for the actions of a municipal employee, a party must allege sufficient facts to demonstrate that it is plausible "(1) that a municipal employee committed a constitutional violation; and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." *Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004). The plaintiff must further show that "the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013). "The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998) (citation omitted). Thus, in order to state a claim under § 1983 for deliberate indifference based on a policy or practice, plaintiffs must allege "(1) official policy or custom, (2) causation, and (3) state of mind." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013). Where the theory for recovery rests on a failure to train or supervise employees, a

plaintiff must prove "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989)); *Brown v. Gray*, 227 F.3d 1278, 1291 (10th Cir. 2000) (applying the same standard to inadequate supervision).

While *Monell* explicitly applies to municipal governments, the Tenth Circuit has extended the *Monell* doctrine to private entities acting under color of state law. *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003) (citations omitted). As with government entities, private entities "cannot be held liable solely because [they] employ[] a tortfeasor – or, in other words . . . cannot be held liable under § 1983 on a respondeat superior theory." *Id.* (quoting *Monell*, 436 U.S. at 691.). "[T]o hold the entity liable, the plaintiff must identify an official policy or a custom that is the 'direct cause' or 'moving force' behind the constitutional violations." *Aguilar v. Colorado State Penitentiary*, 656 F. App'x 400, 403 (10th Cir. 2016) (unpublished) (quoting *Dubbs*, 336 F.3d at 1215).

County Defendants argue that the claims against Sheriff Ensminger and Undersheriff Bishop in their individual capacities must be dismissed because plaintiff does not allege any actions personally taken by them. Docket No. 26 at 6. Plaintiff does not dispute that Sheriff Ensminger and Undersheriff Bishop did not personally participate, but argues that they can nonetheless be held liable for their role in creating a policy or custom of not meeting inmates' serious medical needs or failing to train

prison staff. Docket No. 30 at 7. In reply, County Defendants argue that plaintiff improperly fails to identify a specific policy or training omission that caused a constitutional violation. Docket No. 48 at 3.

CCS Defendants similarly argue that plaintiff does not allege the existence of a policy or practice evincing deliberate indifference to a serious medical need. Docket No. 28 at 6-7. Plaintiff does not dispute that she does not allege a specific policy or identify any specific training deficiencies, but argues that she has met her burden by identifying "a series of incidents by the CCS Defendants of failing to provide adequate medical care." Docket No. 50 at 9. Plaintiff argues that it is possible to infer from the allegations in the complaint that "CCS Defendants either had a policy not to provide adequate medical care to inmates at the Jail, maintained an informal custom that amounted to a permanent and well-settled practice not to provide such care, or did not adequately train employees and jail staff to meet the serious medical needs of inmates." *Id*. at 10.

The Court agrees with County Defendants and CCS Defendants that plaintiff's complaint fails to sufficiently allege a policy or practice. Plaintiff identifies numerous incidents where she alleges prison officials and CCS Defendants have previously failed to provide medical care to inmates with serious medical needs, but there is no apparent relationship between these incidents from which it is possible to infer a common policy or practice that could be the "direct cause" or "moving force" behind such disparate failures to provide medical care. *See Dubbs*, 336 F.3d at 1215. For example, there is no apparent connection between plaintiff's allegation that an inmate at Teller County Detention Center committed suicide because he was denied medication for a known

11

mental illness, Docket No. 38 at 11-12, ¶ 59-60, and the allegation that another inmate at a different facility did not received appropriate medical care after choking on a sandwich. *Id*. at 12-13, ¶ 65. While "official policy or custom may be inferred from a complaint's allegations," *Starstead v. City of Superior*, 533 F. Supp. 1365, 1369 (W.D. Wis. 1982) (citing *Powe v. City of Chicago*, 664 F.2d 639 (7th Cir. 1981)), courts have done so where a "systematic pattern" suggests a "policy in some form was the motivating force." *Id*. at 1369-70; *see also Turpin v. Mailet*, 619 F.2d 196, 203 (2d Cir. 1980) (overturning a jury verdict based on a pattern or practice of police harassment because poor decisions made "in the regular course of . . . business" did not indicate a policy or practice of "encouraging police harassment"). While plaintiff alleges numerous constitutional violations, these incidents do not conform to a systematic pattern from which it is possible to infer any specific underlying policy or practice as the cause. Plaintiff's claim is, in effect, that all failures to provide adequate medical care, no matter the differences in circumstances, result from a common policy or practice. *Compare Lawson v. Dallas Cty.*, 286 F.3d 257, 263 (5th Cir. 2002) (finding deliberate indifference where institutional policies prevented nurses from seeing patients regularly and providing sufficient care). But such an allegation does little more than restate the elements of a deliberate indifference policy claim and provides no basis to attribute causation in any particular incident to persons who did not personally participate. *See Smith v. D.C.*, 674 F. Supp. 2d 209, 212 (D.D.C. 2009) (dismissing case where plaintiff alleged "systemic problems" with inmate medical treatment but did "nothing more than recite the requisite causal elements of custom or policy liability based on deliberate

12

indifference"); *cf. Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986) (explaining that municipal liability can be imposed even for a single act where municipal policymakers caused the constitutional violation).

Plaintiff, likewise, does not sufficiently allege a failure to train or supervise. As plaintiff acknowledges, "ordinarily" a plaintiff must show a defendant "had actual or constructive notice that a *particular omission* in [a training] program caused officials to violate citizens' constitutional rights" and nonetheless "made a conscious choice to retain [the] deficient training program." Docket No. 30 at 6 (citing *Connick v. Thompson*, 563 U.S. 51, 61 (2011)) (emphasis added). Plaintiff does not allege any such particular omission. *See* Docket No. 30 at 6; Docket No. 38 at 16, ¶ 82 and at 18-19, ¶ 97. She instead claims her allegations show that a "violation of federal rights is a 'highly predictable' or 'plainly obvious' consequence of [defendants'] action or inaction." *Barney*, 143 F.3d at 1308 (quoting *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 409 (1997)). But such proof is only possible in "narrow range of circumstances" where "a violation of federal rights may be a highly predictable consequence of a failure to equip [employees] with *specific tools* to handle recurring situations." *Brown*, 520 U.S. at 409 (emphasis added). In *Barney*, where an officer was accused of sexually assaulting inmates, the Tenth Circuit found that the officer's completion of "state certified basic peace officer training program and a correctional officer course after he was hired, which included instruction on offenders' rights, staff/inmate relations, sexual harassment, and cross-gender search and supervision," was sufficient because the plaintiff did not show that such training was "constitutionally

13

deficient." *Barney*, 143 F.3d at 1308.  Here, plaintiff makes no specific factual allegations about the adequacy of the training provided by County Defendants or CCS Defendants, nor does plaintiff identify any "specific tools" with which defendants failed to equip employees.  Rather, plaintiff states in conclusory fashion that "[b]ecause these Defendants have . . . failed, despite the obvious need to do so, to adequately train and supervise Jail officials in providing sufficient medical care and treatment, inmates at the Jail repeatedly have been subjected to violations of their constitutional rights."  Docket No. 38 at 13-14, ¶ 69.  This falls short of alleging facts from which a factfinder could infer that constitutionally deficient training led to plaintiff's injuries.  *See City of Canton, Ohio*, 489 U.S. at 391 ("Thus in the case at hand, respondent must still prove that the deficiency in training actually caused the police officers' indifference to her medical needs."); *see also Van Curen v. McClain Cty. Bd. of Cty. Comm'rs,* 4 F. App'x 554, 557 (10th Cir. 2001) (unpublished) (affirming summary judgment where evidence showed that prison employees were required to review training materials and obtain relevant certifications).

The Court will dismiss plaintiff's § 1983 claims against Sheriff Ensminger, Undersheriff Bishop, and the CCS Defendants.[3]

## B.  ADA Claim

County Defendants argue that plaintiff's ADA claim must be dismissed because her allegations that she was denied the ability to access the detention center's facilities

---

[3] Because this resolves all claims against Sheriff Ensminger, Undersheriff Bishop, and Deputy Voigt for which County Defendants argue that they are entitled to qualified immunity, the Court does not address those arguments.  *See* Docket No. 26 at 9-10.

14

are "conclusory and not supported by any specific details concerning any exclusion of Plaintiff from a service, program, or activity." Docket No. 26 at 9. Plaintiff further argues that the decision to take away plaintiff's walker was "in the nature of a medical or security decision" that does not state an ADA claim. *Id*. (citing *Moore v. Diggins*, 633 F. App'x 672, 677 (10th Cir. 2015) (unpublished)). County Defendants' arguments are unpersuasive.

Title II of the ADA requires that the detention facility provide people with disabilities "meaningful access" to its programs and services. *Robertson v. Las Animas Cty. Sheriff's Dep't*, 500 F.3d 1185, 1195 (10th Cir. 2007) (internal quotation marks and emphasis omitted). Further, the detention center is required to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability." 28 C.F.R. § 35.130(b)(7). Providing detainees with meals in the cafeteria is an activity or service that the detention center provides. *Cf. Robertson*, 500 F.3d at 1199 (finding that probable cause hearings are a provided activity and, "because the facility makes the activity available to detainees in general, it must do so on nondiscriminatory terms"). Plaintiff requested to be able to retain her walker, an aid that would help her reach the cafeteria notwithstanding her limitations, but was denied. Docket No. 38 at 7, ¶¶ 29-32. Although County Defendants suggest that the decision to take away plaintiff's walker was a security or medical decision, the amended complaint contains no allegations that would support their suggestion. The Court finds that, on this record, County Defendants provide no basis to dismiss plaintiff's ADA claim.

15

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that County Defendants' Motion for Partial Dismissal [Docket No. 26] is **GRANTED** in part and **DENIED** in part. It is further

**ORDERED** that Correctional Healthcare Management, Inc.; Correctional Healthcare Companies, Inc.; and Correct Care Solutions, LLC's Motion to Dismiss in Lieu of Answer [Docket No. 28] is **GRANTED**. It is further

**ORDERED** that Nurse Sue's Motion to Dismiss in Lieu of Answer [Docket No. 29] is **DENIED**. It is further

**ORDERED** that plaintiff's first claim for relief is dismissed as to defendants Sheriff Mike Ensminger, Undersheriff Stanley Bishop, Correctional Healthcare Management, Inc., Correctional Healthcare Companies, Inc., and Correct Care Solutions, LLC. It is further

**ORDERED** that plaintiff's second claim for relief is dismissed as to defendants Deputy Eric Voigt, Sheriff Mike Ensminger, Undersheriff Stanley Bishop, Correctional Healthcare Management, Inc., Correctional Healthcare Companies, Inc., and Correct Care Solutions, LLC. It is further

**ORDERED** that plaintiff's third claim for relief is dismissed.

DATED September 19, 2017.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge