IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02603-PAB-NYW

CATHLEEN CARMODY,

    Plaintiff,

v.

SHERIFF JASON MIKESELL, in his official capacity;
CORPORAL FRANK SCOFIELD, in his individual capacity; and
NURSE SUSAN CAMPBELL, in her individual capacity,

    Defendants.
_____

## ORDER
_____

Magistrate Judge Nina Y. Wang

This matter comes before the court Defendant's Motion for Leave to Conduct Ex Parte Interviews ("Motion for Ex Parte Interviews") [#76, filed on October 20, 2017] filed by Defendant Susan Campbell ("Defendant Campbell") pursuant to 28 U.S.C. § 636(b)(1); the Order Referring Case dated October 25, 2016 [#14], and the Memorandum dated October 20, 2017 [#77]. Having reviewed the Parties' briefing, the applicable case law, and entertained oral argument on these issues during the November 8, 2017 hearing, the court hereby **GRANTS IN PART and DENIES IN PART** Defendant Campbell's Motion for Ex Parte Interviews.

## BACKGROUND

This case arises from an alleged "painful and debilitating back injury" sustained by Plaintiff Cathleen Carmody ("Plaintiff" or "Ms. Carmody") while detained at the Teller County Detention Center [#1; #38]. Ms. Carmody alleges in 1999, she sustained a hip injury while working as a nurse. [#38 at ¶ 24]. For fifteen years, she dealt with pain in her hip until she had a

total hip replacement surgery in September 2014. [*Id.*]. As part of her post-operative treatment plan, Ms. Carmody's health care providers instructed her to continue to use a walker until she no longer needed it for walking or balance. [*Id.* at ¶ 25].

Ms. Carmody was arrested On October 23, 2014, and detained at the Teller County Detention Center. [*Id.* at ¶ 26]. After she arrived at the detention center, Defendant Frank Scofield ("Defendant Scofield" or "Corporal Scofield") processed her for intake, but then confiscated her walker and told her that she was "going to have to do without [it]." [*Id.* at ¶¶ 27–31]. For the duration of her detention, Ms. Carmody was deprived the use of her walker, except during court appearances and attorney visits. [*Id.* at ¶ 33]. Otherwise, she was forced to hop on one leg to move around the facility. [*Id.* at ¶ 34].

On October 27, 2014, Ms. Carmody attempted to watch television in the dayroom of the detention center, but while attempting to sit down on a stool, lost her balance and landed on her back. [*Id.* at ¶¶ 36–37]. Ms. Carmody reported that she was having shooting pains in her back and needed an ambulance, but Defendant Campbell denied her request. [*Id.* at ¶¶ 39–40]. Plaintiff alleges that she was never taken for any medical examination and the Teller County Detention Center never provided any medical treatment of her back injury, except Tylenol. [*Id.* at ¶¶ 42–44].

After her release in November 2014, Ms. Carmody sought medical treatment, which has failed to relieve ongoing pain. Plaintiff alleges that, "[a]fter the unsuccessful steroid injection, [she] needed to take morphine to obtain any relief from her pain." [*Id.* at ¶ 52]. She further alleges that she "now needs to take morphine every day to obtain any relief from her back pain," but "[s]he would like to stop taking morphine because of its side effects." [*Id.* at ¶ 54]. She also alleges, "[d]ue to the constant, sever pain and the effect the pain has had on her life, [she] is

depressed all the time. Her daily life consists of trying to manage the pain or manage the side effects of the pain medication. She cannot sleep without pain medication but she hates the way the medication makes her feel." [*Id.* at ¶ 57]. She seeks actual economic losses, including consequential, compensatory, and punitive damages. [#52].

The Parties have proceeded through discovery and, as noted by Plaintiff, this court has considered a number of issues related to Ms. Carmody's medical records. [#67; #72]. The Parties have also sought, and received, extensions of time due to the collection and production of Ms. Carmody's medical records. *See e.g.*, [#60]. Discovery is set to close on December 29, 2017. [#65].

In the instant Motion, Defendant Campbell seeks to conduct ex parte interviews of three categories of health care providers. First, Defendant Campbell seeks to conduct ex parte interviews of Leslie O'Neal, LPN; Joe Moore, LPN; Chi Krantz, RN; and Linda Hewett, NP, who all worked at the Teller County Jail during Ms. Carmody's detention in October 2014. [#76 at 2]. All were medical staff and employees of Correctional Healthcare Companies, Inc.—a previous Defendant in this action. The second category of health care providers is Plaintiff's orthopaedic providers, David S. Matthews M.D. ("Dr. Matthews") and Robert Peterson, Jr. PA-C ("Mr. Peterson"). [*Id.* at 3]. Last, Defendants seek to conduct an ex parte interview of Dr. Francis Joseph, Ms. Carmody's primary care physician from December 2014 to October 2016. [*Id.*]. Plaintiff objects, arguing that the requests are overly broad and likely implicate confidential and irrelevant information; that three of the health care providers will be deposed and, therefore, ex parte interviews are not necessary; and that Defendants have failed to establish a "compelling need" for the ex parte interviews. [#83]. Plaintiff further contends that she should

be given adequate notice of any interviews with her health care providers, and an opportunity for her, or her counsel, to attend. [*Id.* at 6].

## LEGAL STANDARDS

Rule 26(b)(1) of the Federal Rules of Civil Procedure defines the scope of permissible discovery in this action. Fed. R. Civ. P. 26(b)(1). The Rule permits discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. *Id.* In considering whether the discovery sought is proportional, the court weighs the importance of the discovery to the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *Id.*

This scope for discovery does not include all information "reasonably calculated to lead to admissible evidence." The amendments to Rule 26 effective December 1, 2015, purposefully removed that phrase. *See In re Bard Filters Products Liability Litig.*, 317 F.R.D. 562, 564 (D. Ariz. 2016). As explained by the *Bard* court, the Advisory Committee on the Federal Rules of Civil Procedure was concerned that the phrase had been used incorrectly by parties and courts to define the scope of discovery, which "might swallow any other limitation on the scope of discovery." *Id.* (citing Fed. R. Civ. P. 26 advisory committee's notes to 2015 amendment). The applicable test is whether the evidence sought is relevant to any party's claim or defense, and proportional to the needs of the case. *Id.* Rule 401 of the Federal Rules of Evidence defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Fed. R. Evid. 401.

The Federal Rules of Civil Procedure contemplate that parties are not limited to one method of discovery to ascertain relevant information. Fed. R. Civ. P. 26(d)(3). Nor do the Federal Rules of Civil Procedure specifically govern informal discovery. *See Matzke v. Merck & Co.*, 161 F.R.D. 106, 107 (D. Kan. 1994). Nevertheless, courts retain the discretion to enter protective orders where the court determines that there is good cause to prevent a party or person from annoyance, embarrassment, oppressions, or undue burden or expense. Fed. R. Civ. P. 26(c). Such an order may include one or more of the following limitations:

> (A) forbidding the disclosure or discovery;
>
> (B) specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery;
>
> (C) prescribing a discovery method other than the one selected by the party seeking discovery;
>
> (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;
>
> (E) designating the persons who may be present while the discovery is conducted;
>
> (F) requiring that a deposition be sealed and opened only on court order;
>
> (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and
>
> (H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

Fed. R. Civ. P. 26(c)(1)(A)–(H).

## ANALYSIS

Because this claim arises under federal law, this court looks to federal, rather than state, law in analyzing whether ex parte interviews of Plaintiff's health care providers is permitted. The Parties agree that there is no federal physician-patient privilege. [#76 at 4; #83 at 4]. There

can be no dispute that Plaintiff has injected her physical and mental condition into this case by asserting that Defendants' deprivation of her walker during her detention at the Teller County Detention Center caused her to injure her back, and that "[d]ue to the constant, severe pain and the effect the pain has had on her life, [she] is depressed all the time. Her daily life consists of trying to manage the pain or manage the side effects of the pain medication. She cannot sleep without pain medication but she hates the way the medication makes her feel." [#38 at ¶ 57]. In addition, there is no dispute that Ms. Carmody had a preexisting hip condition that caused her pain between 1999 and 2014 that she "dealt with." [*Id.* at ¶ 24]. Accordingly, Plaintiff has not only directly put any treatment (or lack thereof) that she received at Teller County Detention Center at issue, but she has also waived any applicable privacy rights as to medical information associated with any hip injury (preexisting or current); back injury (preexisting or current); complaints of pain; use and management of any pain medication (preexisting or current); psychological well-being; and physical limitations from 2009 to the present [#67 at 2]. *See Carbajal v. Warner*, No. 10–cv–02862–REB–KLM, 2013 WL 1129429, at *5 (D. Colo. Mar. 18, 2013).

Thus, this court finds that it is appropriate for Defendant Campbell to seek ex parte interviews with Leslie O'Neal, LPN; Joe Moore, LPN; Chi Krantz, RN; and Linda Hewett, NP, who all worked at the Teller County Jail during Ms. Carmody's detention in October 2014. Though it is not clear whether all of these individuals were directly involved with Plaintiff's treatment from October to November 2014, this court finds no reason to preclude Nurse Campbell from conducting ex parte interviews with her colleagues regarding their observations and/or treatment of the above-defined topics, so long as each of the individuals is provided a copy of this court's Order defining the appropriate areas of inquiry and is expressly informed

that his or her cooperation is entirely voluntary at the time the interview is requested. Indeed, as our sister courts within this Circuit have observed, "[w]itnesses, of course, may refuse to communicate ex parte and thus require the parties to resort to formal discovery procedures." *Lowen v. Via Christi Hosps. Wichita, Inc.*, No. 10-1201-RDR, 2010 WL 4739431, at *2 (D. Kan. Nov. 16, 2010) (citation and internal quotation marks omitted). With these requirements in place, this court finds no justification in requiring Defendant Campbell to include Plaintiff or Plaintiff's counsel in any interviews.

Ex parte interviews with Ms. Carmody's treating orthopaedic health care providers, Dr. Matthews and Mr. Peterson, raise an additional concern that such interviews could disrupt an existing physician-patient privilege. *See Hixson v. United States*, No. 09-CV-00495-MSK-MEH, 2009 WL 1976016, at *2 (D. Colo. July 8, 2009), *order clarified*, No. 09-CV-00495-MSK-MEH, 2009 WL 2358923 (D. Colo. July 30, 2009). But this court finds that the potential disruption caused by ex parte interviews is no more significant than the potential presented by Dr. Matthews and Mr. Peterson's upcoming depositions. And this court finds the reasoning of the Honorable Gerald L. Rushfeldt from the District of Kansas persuasive:

> To prohibit *ex parte* communications would allow one party unrestricted access to fact witnesses, while requiring the other party to use formal discovery that could be expensive, timely, and unnecessary.

*Pratt v. Petelin*, No. 09-2252- CM-GLR, 2010 WL 446474, at *7 (D. Kan. Feb. 4, 2010). There is no contention that Ms. Carmody or her counsel would be unable to speak with her orthopaedic providers without including Defendants or counsel for Defendants, and Plaintiff has not argued that either of these providers has been designated as an expert witness in this action that might implicate considerations or limitations under Rule 26(b) of the Federal Rules of Civil Procedure. Thus, this court finds that Defendant Campbell may pursue ex parte interviews with Ms. Carmody's orthopaedic providers. Again, these health care providers must be provided a copy of

this court's Order defining the appropriate areas of inquiry and must be expressly informed that his or her cooperation is entirely voluntary at the time the interview is requested.

Next, this court considers whether an ex parte interview of Dr. Joseph should be allowed. The Parties identified Dr. Joseph as Plaintiff's primary care physician from December 2014 to October 2016, and Defendant Campbell asserts that an emergency room record indicates that Ms. Carmody had a "pain contract" with Dr. Joseph. While the residual privilege issues arising under Colorado law are not formally applicable, this court finds that Dr. Joseph is more likely to have information regarding Ms. Carmody's health that is not relevant to her allegations raised by this action. Despite having her medical records, Defendant Campbell has made no particular showing that reflects what a "pain contract" refers to, or that Dr. Joseph has specific relevant information, e.g., that he treated her hip or back injury or provided mental health consultation. With these considerations in mind, this court finds that a formal deposition of Dr. Joseph is more appropriate than an ex parte interview.

Finally, to address any lingering privacy concerns cognizable under federal common law or the Health Insurance Portability and Accountability Act of 1996, this court specifically orders that all health information gathered by Defendant Campbell should be protected from dissemination, consistent with the requirements of the previously entered Protective Order. [#43].

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that:

(1) Defendant Campbell's Motion for Leave to Conduct Ex Parte Interviews [#76] is **GRANTED IN PART and DENIED IN PART;**

(2) Defendant Campbell may seek ex parte interviews on the following topics: any hip injury (preexisting or current); back injury (preexisting or current); complaints of pain; use and management of any pain medication (preexisting or current); psychological well-being; and physical limitations from 2007 to the present;

(3) Such ex parte interviews may be sought from and conducted with the following health care providers: Leslie O'Neal, LPN; Joe Moore, LPN; Chi Krantz, RN; Linda Hewett, NP; David S. Matthews, M.D.; and Robert Peterson, Jr. PA-C; and

(4) In conjunction with requesting any ex parte interviews, Defendant Campbell must provide each health care provider a copy of this Order and specifically advise the health care provider that his or her participation in an ex parte interview is entirely voluntary.

DATED: November 9, 2017

BY THE COURT:

s/ Nina Y. Wang
United States Magistrate Judge